UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,
*ex rel*. INNOVATIVE SOLUTIONS
CONSULTING, LLC,

      Plaintiff,

  v.

VASSO GODZIACHVILI GODIALI, M.D.,

      Defendant.

Case No.

**Jury Trial Demanded**

**Filed Under Seal**
31 U.S.C. § 3730(b)(2)

## Section 3730 (b)(2) DISCLOSURE STATEMENT IN SUPPORT OF FCA CLAIM

The essential factual basis for the FCA claim in this action is that Defendant Vasso Godziachvili Godiali ("Godiali") has knowingly submitted falsified and fraudulent billings and charges to Medicare in an effort to be paid for services that were not provided, not medically necessary, or were fraudulently coded in such a manner that increased the amount of payments Godiali received from Medicare. Importantly, Medicare only pays providers for services that are medically necessary and which were actually performed. Relator has discovered that Godiali is a physician who has fraudulently billed Medicare and received payment based upon his falsified and fraudulent claims.

Plaintiff-Relator Innovative Solutions Consulting, LLC ("Innovative LLC") is an Arizona Limited Liability Company. Innovative LLC is in the consulting business. Defendant Godiali is a vascular surgeon and medical director who is licensed in the State of Michigan. His license number is 43-01-065556. Godiali practices in Bay City, Michigan

1

is the owner of a clinic known as Bay City Vascular P.C. Godiali has been the subject of at least one disciplinary proceeding, which is known as State of Michigan, Department of Licensing and Regulatory Affairs, Complaint Number 43-11-122627. The administrative complaint was filed on January 23, 2013 and a consent order was agreed to and signed on November 20, 2013. In the administrative complaint, Godiali admitted that he did not perform a surgical procedure even though he prepared and authenticated an operative report stating that he had performed the procedure. A true and accurate copy of the Consent Order and Administrative Complaint are attached hereto as Exhibit A.

CMS has prepared a public data set, the Medicare Provider Utilization and Payment Data: Physician and Other Supplier Public Use File (the "payment data"), with information on services and procedures provided to Medicare beneficiaries by physicians and other healthcare professionals. The payment data contains information on utilization, payment (allowed amount and Medicare payment), and submitted charges organized by National Provider Identifier (NPI), Healthcare Common Procedure Coding System (HCPCS) code, and place of service (POS). The payment data is based on information from CMS's National Claims History Standard Analytic Files. The payment data subject to this action covers calendar year 2013 and contains 100% final-action physician/supplier Part B non-institutional line items for the Medicare fee-for-service population.

The raw data published by CMS contains more than 8,600 types of unique services (HCPCS Codes) that are delivered in 45 different settings and that are consolidated into two places of service, both facility and non-facility. Thus, there are more than 2.5 billion total services provided by more than 950,000 unique NPIs. Per CMS, the payment data contains more than nine million records. Relator has undertaken an extensive examination

2

and analysis of the payment data that has detected and uncovered Godiali's fraudulent billings and charges. The raw payment data from which Relator conducted its research and proprietary calculations is available to the public but Relator's results are not.

Relator's complex, multifaceted analysis for detecting and uncovering fraudulent billing and charges has provided holistic and comparative context where none existed in the raw payment data. Relator has developed a proprietary formula and methodology (the "formula") that identifies medical providers that have fraudulently falsified Medicare claims submissions for payment. This formula is necessary as no entity or person could view the payment data in a vacuum and realize that Godiali knowingly submitted falsified and fraudulent billings and charges to Medicare. Relator's independent knowledge, ingenuity, and insight have materially added to any public disclosure and Relator has contributed significant information on its own.

Relator's formula is a multistep statistical process that analyzes the payment data under a variety of circumstances. Due to the proprietary nature of the work performed, Relator has not specifically described the detailed step-by-step approach that has been applied to the payment data. After applying its formula to the payment data, Relator's formula outputs numerous sets of data that are not publicly available and that which required Relator's substantial efforts to formulate. The formula has calculated the following non-exhaustive list of results:

  i. A same specialty peer average which compares Godiali's Medicare claims submissions to that of the average vascular surgeon's Medicare claims submissions. In essence, this is an average among similarly situated people

3

    as Godiali's billings are being compared to other vascular surgeons' billings.

  ii. Godiali's national ranking in terms of each specific HCPCS-POS code combination that he used when submitting claims to Medicare in relation to all other medical providers' use of each specific HCPCS-POS code combination as well.

  iii. Godiali's usage of a specific HCPCS-POS code combination as a percentage of that individual HCPCS-POS code combination's total claim usage throughout the United States. For example, Godiali submitted claims with code 75820-O ('Imaging of Vein of Arm or Leg' in a non-facility place of service) to Medicare 995 times in 2013. The total claims submitted to Medicare with code 75820-O in 2013 by 723 different providers was 5,278 claims. Thus, Godiali was responsible for 19% of the nation's total claims with code 75820-O.

  iv. Calculated the total number of Work Relative Value Units (WRVU) consumed by Godiali in comparison to other vascular surgeons.

After performing its analysis, Relator determined that in 2013, half of the HCPCS-POS procedure code combinations used by Godiali ranked in the top twenty nationally for total usage and more than one out of four code combinations used by Godiali were nationally ranked as number one. Stated differently, many of the billing codes used by Godiali were submitted by him more than any other provider in the country. Relator was able to determine that Godiali was billing Medicare amounts far in excess of a normal provider and oftentimes, was billing Medicare amounts that made Godiali the largest

Medicare biller in the country. Attached as Exhibit B is an overview of Relator's confidential and proprietary results. As Exhibit B demonstrates, Godiali billed Medicare for the number of total medical services 23.6 times more frequently than did the average vascular surgeon and Godiali billed an average of 25.2 medical services per patient, whereas an average vascular surgeon billed only 2.7 medical services per patient. Clearly, Godiali billed Medicare at a substantially higher rate than the average vascular surgeon was billing Medicare. Astonishingly, Godiali submitted claims for medical services to Medicare in the total amount of $39,325,028. The average vascular surgeon's submitted claims for medical services to Medicare only totaled $1,145,588. This indicates Godiali submitted claims to Medicare in an amount 34.3 times higher than the average vascular surgeon submitted claims to Medicare. Of these submitted charges for medical services, Medicare allowed Godiali payments in the amount of $14,002,242 and actually paid Godiali $11,020,617. The average vascular surgeon was allowed payment in the amount of $329,874 and actually received payments in the average amount of $254,267. Godiali's average payment per patient for medical services amounted to $6,918 versus the average vascular surgeon's average payment per patient amount of only $408.

Godiali billed Medicare for 63 HCPCS-POS unique code combinations for which Godiali was the highest provider of medical services nationally. 97 of Godiali's submitted HCPCS-POS code combinations ranked in the top-five nationally for usage and 121 of Godiali's HCPCS-POS code combinations ranked in the Top-20 nationally for number of medical services provided. Thus, half of his submitted codes were in top-twenty nationally for total usage. Attached hereto as Exhibit C is a chart created by Relator than outlines Godiali's usage of the HCPCS-POS code combinations that placed him in the Top-20

5

nationally based upon usage in claims. Godiali had an average rank of 3.6 across these 121 code combinations, for which Godiali's national rank breakdown is as follows:

| National Rank | # of HCPCS-POS | Godiali - Number of Services | Godiali- $ Allowed |
|---|---|---|---|
| 1 | 63 | 22,814 | $9,169,632 |
| 2 | 17 | 2,656 | $567,045 |
| 3 | 10 | 1,937 | $183,287 |
| 4 | 5 | 472 | $100,702 |
| 5 | 2 | 953 | $1,076,059 |
| 6 | 2 | 296 | $38,164 |
| 7 | 2 | 65 | $16,667 |
| 8 | 3 | 202 | $40,819 |
| 9 | 2 | 587 | $35,738 |
| 10 | 2 | 103 | $10,276 |
| 11 | 2 | 461 | $62,437 |
| 13 | 6 | 2,191 | $913,468 |
| 15 | 1 | 35 | $22,694 |
| 17 | 1 | 63 | $13,700 |
| 18 | 1 | 19 | $4,577 |
| 19 | 1 | 66 | $8,769 |
| 20 | 1 | 23 | $4,733 |
| **Grand Total** | **121** | **32,943** | **$12,268,767** |

Relator's formula also has produced results relating to Godiali's total Work Relative Value Units (WRVU). WRVUs reflect the relative time and intensity associated with furnishing a given service for each HCPCS code and represent a standardized and consistent metric, which is a predominant factor in physician compensation. Relator obtained values from the 2013 National Physician Fee Schedule Relative Value File in order to help complete the analysis. Relator then computed Godiali's total WRVU by matching the HCPCS codes Godiali submitted with the values in the 2013 National Physician Fee Schedule Relative Value File. Relator then also obtained the "Cost Survey: 2014 Report Based on 2013 Data," which was published by the Medical Group Management Association (MGMA). After obtaining the cost survey, Relator created a

comparison that compares Godiali with his busiest peers (vascular surgeons) at the 90th percentile as published in the MGMA cost survey. The following table, which was created by Relator, demonstrates the comparison between Godiali and the 90th percentile revenue producers and WRVU consuming vascular surgeons.

|  | **Godiali (From Medicare only)** | **MGMA - Vascular Surgery 90th Percentile - All Payers** | **Godiali as a % of 90th Percentile MGMA Peer** |
|---|---|---|---|
| Total Medical Revenue | $11,020,617 | $1,043,085 | 1,057% |
| WRVU | 132,854 | 15,534 | 855% |

After conducting this comparison, it is clear that Godiali submitted claims to Medicare that indicate he was allegedly 8-10 times more productive than the busiest (defined as 90th percentile) vascular surgeon in the MGMA cost survey. There were 63 HCPCS-POS combinations for which Godiali was the highest provider of services nationally. He submitted claims for services that were three times higher on average than the second highest provider. For nine of these combinations, Godiali was the only provider nationally with greater than 10 patients. For 17 of the HCPCS-POS combinations Godiali's usage was at least five times that of the next closest provider, for six of them it was ten times that of the next closest provider, and for '37212-O' it was 33 times that of the second highest provider. Attached as Exhibit D is a chart created by Relator that compares Godiali's HCPCS usage versus the number two ranked provider of the same HCPCS code.

Lastly, Relator created a comparison that compares Godiali with all vascular surgeons nationally with greater than 10 patients in the utilization of patient Evaluation and Management (E&M) codes for office visits and hospital admissions in the following table:

| E&M Code Usage Comparison | | Godiali | | All Vascular Surgeons Nationally | | Godiali as a % of Vascular Surgery Peer |
|---|---|---|---|---|---|---|
| HCPCS CODE | HCPCSDESCRIPTION | Number of Services | % at Highest Level | Number of Services | % at Highest Level | |
| 99205 | New patient office or other outpatient visit, typically 60 minutes | 245 | 100% | 23,316 | 9% | 1,093% |
| 99215 | Established patient office or other outpatient, visit typically 40 minutes | 694 | 91% | 25,443 | 3% | 3,434% |
| 99223 | Initial hospital inpatient care, typically 70 minutes per day | 242 | 100% | 41,959 | 35% | 285% |

After conducting this comparison, it has become clear that Godiali's aberrant usage of the highest-level E&M codes (requiring comprehensive history, comprehensive examination, and medical decision making of high complexity) for nearly every patient demonstrates a clear pattern of up-coding. It is simply not possible that patients with more severe problems allegedly presented themselves to Godiali at 2.85 times more frequently in an inpatient setting and 10-34 times more frequently in an outpatient setting compared to all vascular surgeons nationally.

Documents and Evidence in Support:

- ➢ Relator has produced the Exhibits referenced above as Exhibits A-D.
- ➢ Relator has personal, original source information and personal observations and knowledge which further illuminate Godiali's fraudulent Medicare billings.

Respectfully Submitted,

MAHANY LAW, LLC


/s/ Brian H. Mahany
Brian H. Mahany, Esq.
Counsel for the Relator, Innovative Solutions Consulting, LLC